## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLINE DE LA CRUZ,          :          **Civil No. 1:19-CV-01172**
                              :
               Plaintiff,     :
                              :          (**Chief Magistrate Judge Schwab**)
        v.                    :
                              :
ANDREW M. SAUL,               :
Commissioner of Social Security :
                              :
               Defendant.     :

## MEMORANDUM OPINION

### I.  Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The plaintiff, Charline De La Cruz ("De La Cruz"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Supplemental Security Income ("SSI") benefits as both a child and an adult under Title XVI of the Social Security Act.  We have jurisdiction over the case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision will be vacated, and the case will be remanded to the Commissioner for further consideration.

## II.  Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 6-1* to *6-17*.[1]  On March 6, 2013, an application for supplemental security insurance ("SSI") was protectively filed on behalf of De La Cruz, who at the time was a child under the age of 18, alleging that she had been disabled since January 1, 2011. *Admin Tr.* at 16.  Following the initial denial of De La Cruz's claim, the case went before an administrative law judge, who concluded that De La Cruz was not disabled and who denied her benefits on that basis on December 2, 2014. *Id.* at 10–28.  De La Cruz requested review of the ALJ's decision before the Social Security Administration's Appeals Council, which denied her request for review. *Id.* at 430.

In April 2016, De La Cruz filed a complaint with this court seeking judicial review of the Commissioner's final decision denying her benefits. *Id.* at 436–38.  On November 15, 2017, this court ruled that the Commissioner's decision was not supported by substantial evidence and remanded the matter to the Commissioner for further proceedings. *Id.* at 466.  The court ruled that the ALJ failed to discuss the opinions of De La Cruz's treating psychologist, Dr. David Baker, and improperly assigned significant weight to the opinions of De La Cruz's teacher,

---

[1]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on De La Cruz's claims.

Kristen Hartsock, and the State agency psychological consultant, Dr. Soraya Amanullah, in determining whether her severe impairments functionally equaled the requisite listed impairments. *Id.* at 465.

Following this remand, a second administrative hearing was conducted on October 30, 2018. *Id.* at 382–406.  And on March 25, 2019, Administrative Law Judge Susan Torres ("the ALJ") issued a decision denying De La Cruz's application for benefits. *Id.* at 349.

On July 10, 2019, De La Cruz began this action by filing a complaint seeking judicial review of the Commissioner's final decision denying her benefits. *Doc. 1.*  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 5–6.* The parties have filed briefs, and this matter is ripe for decision. *Docs. 10, 12, 13.*

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether De La Cruz is disabled, but whether substantial evidence supports the Commissioner's finding

that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ in Evaluating Title XVI Childhood Disability Claims.

To receive SSI pursuant to Title XVI of the Social Security Act, a claimant under the age of 18 ("child") must demonstrate that he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906.  The ALJ follows a three-step sequential-evaluation process to determine whether a child claimant is disabled. *See* 20 C.F.R. § 416.924.  Under this process, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has an impairment or combination of impairments that is severe; and (3) if so, whether the child's severe impairment (or combination of impairments) meets, medically equals, or functionally equals one of the disability listings. *Id.*

An impairment meets or medically equals a listed impairment if the impairment, or combination of impairments, and its symptoms are equal in severity and duration to the criteria of any listed impairment. *Id.* § 416.926(a); *see also*

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  If a child's impairment, or

combination of impairments, does not meet or medically equal a listing, the ALJ

will decide whether the impairment results in limitations that are functionally

equivalent to a listed impairment. 20 C.F.R. § 416.926a(a).  Whether a child's

impairment functionally equals a disability listing is analyzed in terms of six

functional domains. *Id.* § 416.926a(b).  "These domains are broad areas of

functioning intended to capture all of what a child can or cannot do." *Id.*

§ 416.926a(b)(1).  The six domains are: (1) acquiring and using information;

(2) attending and completing tasks; (3) interacting and relating with others;

(4) moving about and manipulating objects; (5) caring for oneself; and (6) health

and physical wellbeing. *Id.*  When determining whether an impairment is

functionally equivalent to a listing, the ALJ considers the effects of all the child's

impairments, including those impairments that the ALJ does not identify as severe

at step two of the analysis. *Id.* § 416.926a(a).

   An impairment is functionally equivalent to a disability listing if it results in

a "marked" limitation in two domains or an "extreme" limitation in one domain.

*Id.*  A "marked" limitation is one that seriously interferes with the child's "ability

to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).

A "'[m]arked' limitation also means a limitation that is 'more than moderate' but

'less than extreme.'" *Id.*  An "extreme" limitation is one that very seriously

interferes with the child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).  An "'[e]xtreme' limitation also means a limitation that is 'more than marked.'" *Id.*

The ALJ uses a "whole child" approach in determining whether an impairment is functionally equivalent to a listing. *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule—the "Whole Child" Approach*, SSR 09-1p, 2009 WL 396031 (Feb. 17, 2009).  Under this approach, the ALJ begins "by considering the child's functioning without considering the domains or individual impairments." *Id.* at 1.  After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities," and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id.* at 2.  An impairment "may have effects in more than one domain" and limitations caused by an impairment must be evaluated "in any affected domain(s)." *Id.* (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id.*  "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id.*

### C.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ in Evaluating Title XVI Adult Disability Claims.

To receive disability benefits, pursuant to Title XVI of the Social Security Act, an adult claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In determining whether the claimant is disabled, the ALJ follows a five-step sequential-evaluation process. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). *Id.* § 416.920(a)(4).

As part of step four, the ALJ must assess a claimant's RFC. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 416.920(a), 416.945(a).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

Additionally, the ALJ's disability determination must meet certain basic substantive requirements.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision

which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (3d Cir. 2000) (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying De La Cruz's Claim.

De La Cruz was 12 years old when the application for childhood disability benefits was filed on her behalf. *Admin. Tr.* at 263.  Therefore, she fell within the "Adolescents (age 12 to attainment of age 18)" age group. *Id.* at 354.  During the administrative process, however, De La Cruz turned 18. *Id.*  Thus, the ALJ also evaluated De La Cruz's eligibility for SSI as an adult.  The court will address the ALJ's factual findings regarding De La Cruz's request for childhood disability benefits under Title XVI in Section IV. A. of this opinion, and it will address the ALJ's factual findings regarding De La Cruz's requests for adult benefits in Section IV. B.

### A.  The ALJ's Analysis of De La Cruz's Childhood Disability Application.

On March 28, 2019, the ALJ issued a decision denying De La Cruz benefits. *Id.* at 343.  At step one of the three-step sequential-evaluation process used in childhood disability claims, the ALJ found that De La Cruz had not engaged in substantial gainful activity since March 6, 2013, the date the application was filed. *Id.* at 354.

At step two, the ALJ found that De La Cruz had the severe impairments of bipolar disorder, major depressive disorder, generalized anxiety disorder, intermittent explosive disorder, conduct disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.*

At step three, the ALJ found that none of De La Cruz's impairments met, or medically equaled, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 355.  In making this determination, the ALJ considered De La Cruz's testimony and the testimony of her mother. *Id.* at 356.  Specifically, the ALJ considered De La Cruz's testimony that she feels depressed most of the time; that she is unable to concentrate or focus; that she becomes aggressive when someone tells her to do something in a way that is not nice; that she does not have a lot of friends; and that she does not go out much. *Id.* at 356.  The ALJ also considered the testimony of De La Cruz's mother, Ms. Juana Gines, who testified that part of the time, De La Cruz seems depressed and she wants to be by herself;

that she is unable to do things for herself; that she forgets skills that she is taught; that she is a slow learner and requires excessive repetition of information; that she resists attending school, misses a lot of classes, and is failing in school; and that she does not want to socialize with or be around others. *Id.* The ALJ also recounted Ms. Gines's testimony about De La Cruz's aggression and fighting, which twice resulted in the police being called. *Id*.

The ALJ found that De La Cruz's "medically determinable impairments reasonably could be expected to produce the alleged symptoms. However, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons discussed in this decision." *Id.*

In addition to the testimony of both De La Cruz and her mother, the ALJ considered De La Cruz's education and treatment records. The ALJ noted that De La Cruz has experienced problems focusing since she was three years old and that she began to receive school-based therapy when she was five years old. *Id.* The ALJ noted that De La Cruz repeated second grade, and she has received mental health services, including medication management and therapy through the School Site program, since September 2008. *Id.* at 356-57. Further, the ALJ noted that in January 2012, De La Cruz continued to exhibit difficulties concerning the consistency of her academic performance and lack of caring attitude about herself

12

and school. *Id.* at 357.  Moreover, in February 2012, it was noted that De La Cruz was performing poorly in the fifth grade because she was distracted, and was skipping her medication doses. *Id.*  Thus, De La Cruz was prescribed a stimulant medication for ADHD. *Id.*  On March 12, 2012, De La Cruz reported that her ADHD medication was helping her on practice examinations, and that she was finding that she was taking time to check her work. *Id.*  But in May 2012, De La Cruz's psychiatric provider indicated that she had not been taking her prescribed medication over the past six weeks and had missed several follow-up appointments. *Id.*  In June 2012, De La Cruz was discharged from the School Site program because she was moving from New York to Pennsylvania. *Id.*

During the 2012-2013 academic school year, De La Cruz was in the sixth grade and had a total of 40 tardy appearances and 15 absences. *Id.*  The ALJ noted that, in March 2013, De La Cruz underwent a psychiatric evaluation, at which time it was noted that she had not received medication or any mental health treatment since her family relocated from New York in the summer of 2012. *Id.*  It was also noted that De La Cruz was experiencing increased discord with her mother, and that her psychiatric provider opined that her depression was likely associated with enmeshed family relationships. *Id.*  On May 14, 2013, De La Cruz underwent evaluation for eligibility for Behavioral Health Rehabilitative Services at the recommendation of a case manager. *Id.*

During the 2013-2014 school year, De La Cruz was in the seventh grade. *Id.* The ALJ noted that De La Cruz received discipline for an incident at school in September 2013, no discipline for another incident in October 2013, and an out-of-school suspension on October 8, 2013, for defiant behavior. *Id.* And in November 2013, De La Cruz underwent evaluation for potential placement in a partial hospitalization program after she had been suspended for running in the halls and skipping classes at school with increased fighting at home and school. *Id.* Shortly thereafter, De La Cruz was admitted to the partial hospitalization program, from which she was discharged on December 12, 2013. *Id.* At a re-evaluation for Behavioral Health Rehabilitative Services on May 24, 2014, it was noted that De La Cruz was failing the seventh grade because she refused to do work at school and appeared very passively aggressive. *Id.* De La Cruz was psychiatrically hospitalized from May 19, 2014, through May 30, 2014, after a physical altercation with her father. *Id.*

During the 2014-2015 school year, De La Cruz was in the eighth grade. *Id.* at 358. The ALJ noted De La Cruz was taking her medication and was doing better. *Id.* at 359.

During the 2015-2016 school year, De La Cruz was in the ninth grade. *Id.* at 359. The ALJ recounted that on November 18, 2015, it was noted that during the first marking period, with the exception of one "F," De La Cruz received all "A"

14

grades, but she was regularly skipping classes, such that her grades were declining. *Id.* Specifically, the ALJ noted that De La Cruz had missed approximately 20 days of school because she had awoken late or could not find her uniform. *Id.* Shortly thereafter, a Section 504 plan was instituted because of De La Cruz's inability to focus due to anxiety and struggles with peer relationships. *Id.* On May 11, 2016, however, De La Cruz withdrew from her brick-and-mortar high school and enrolled in cyber school due to reported violence between minority groups at school. *Id.*

During the 2016-2017 school year, De La Cruz attended cyber school in a combined ninth-and-tenth-grade program. *Id.* On April 20, 2017, De La Cruz's psychiatric provider, who last seen her on August 9, 2016, indicated that she reportedly appeared distracted with episodes of anger, and she was not taking her medication as recommended. *Id.* Later in April 2017, it was noted that De La Cruz had 14 unexcused absences from school. *Id.* The ALJ recounted that De La Cruz continued in the ninth-and-tenth-grade program in 2017-2018. *Id.* On November 2, 2017, however, De La Cruz reported to her psychiatric provider that she frequently forgets to log into school and her grades had dropped. *Id.*

The ALJ observed that "the evidence very clearly details that during the brief periods of time in which [De La Cruz] underwent medication management and actually took her medications as prescribed, she realized improvement in

attitude, moodiness and attentional issues." *Id.* at 361.  But, the ALJ continued, "[u]nfortunately, the record documents that these periods of compliance largely were brief and unsustained." *Id.*  The ALJ further noted that De La Cruz did not consistently attend therapy or undergo case management services as recommended. *Id.*

The ALJ also analyzed the opinions of medical sources and nonmedical sources involved in the case.  The ALJ considered the opinion of Ms. Hartsock, De La Cruz's sixth-grade literacy, geography, and homeroom teacher. *Id.*  Ms. Hartsock indicated that De La Cruz had an obvious problem in the following areas: comprehending and doing math problems; applying problem solving skills in class discussions; and working at a reasonable pace.  *Id.*  Ms. Hartsock further indicated that De La Cruz had a slight problem in the following areas: comprehending oral instructions; understanding and participating in class discussions; providing adequate and organized descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; paying attention when spoken to directly; focusing long enough to finish tasks; carrying out multistep instructions; and changing activities without disruption. *Id.*  The ALJ afforded partial weight to Ms. Hartsock's opinion to the extent that her observations were suggestive of less than marked limitation in all functional domains, except for interacting and relating with others. *Id.*

The ALJ considered a Child and Adolescent Needs and Strengths ("CANS") assessment completed by Courtney Schaub, M.A. and Michael Boerger, M.S., De La Cruz's psychology providers. *Id.* at 363.[2]  On April 27, 2015, Ms. Schaub and Mr. Boerger completed a CANS assessment, indicating that De La Cruz needed assistance in the following areas: attention/deficit/impulse, depression/anxiety, oppositional behavior, anger control, danger to others and social functioning-peer. *Id.*  The ALJ afforded partial weight to the CANS assessment completed by Ms. Schaub and Mr. Boerger to the extent that their findings were suggestive of marked limitation in the functional domain of interacting and relating with others. *Id.*  But to the extent that their findings were suggestive of marked or greater limitation in any other functional domain, the ALJ concluded that they were inconsistent with the record. *Id.*

The ALJ also considered the CANS assessments completed by Mary Blake, M.A. and Dr. Baker.  In November 2013, October 2014, and May 2014, Ms. Blake and Dr. Baker opined that De La Cruz had actionable need in the following areas: attention/deficit/impulse, depression/anxiety, oppositional behavior, anger control,

---

[2]  "The Child and Adolescent Needs and Strengths (CANS) is a multi-purpose tool developed for children's services to support decision making, including level of care and service planning, to facilitate quality improvement initiatives, and to allow for the monitoring of outcomes of services." The John Praed Foundation, *Child and Adolescent Needs and Strengths*, https://praedfoundation.org/project/child-and-adolescent-needs-and-strengths-2/ (last visited October 26, 2020).

social behavior, family functioning, living situation, social functioning-peer, and school behavior and achievement. *Id.* The ALJ assigned partial weight to the CANS assessments completed by these providers to the extent that their findings were suggestive of marked limitation in the functional domain of interacting and relating with others. *Id.* But to the extent that their findings were suggestive of marked or greater limitation in any other functional domain, the ALJ concluded that they were inconsistent with the record. *Id.*

The ALJ considered the opinion of Dr. Amanullah, a State agency psychological consultant. *Id.* at 364. On May 29, 2013, Dr. Amanullah opined that De La Cruz had less than marked limitation in the following areas: attending and completing tasks; and interacting and relating with others. *Id.* Dr. Amanullah further opined that De La Cruz had no limitation in the following areas: acquiring and using information; moving about and manipulating objects; caring for herself; and health and physical wellbeing. *Id.* The ALJ assigned partial weight to Dr. Amanullah's opinion concluding that while she found that Dr. Amanullah's findings as to interacting and relating with others was not extensive enough based upon subsequent events, to the extent that the remainder of Dr. Amanullah's limitations were suggestive of less than marked or no limitation in the other functional domains, Dr. Amanullah's findings were consistent with the record. *Id.*

The ALJ also considered De La Cruz's Global Assessment of Functioning

("GAF") scores of 40 to 70 rendered between September 23, 2008, and November

12, 2014. *Id.*[3]  The ALJ noted that the GAF scores represented a subjective

assessment of an area of De La Cruz's functioning at a specific time based upon

information provided by De La Cruz and/or third parties, but they were not an

objective representation of De La Cruz's overall functioning over a longitudinal

period of time. *Id.*  And the ALJ afforded the GAF scores only partial weight.

---

[3]  GAF scores in the range of 70-61 represent "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, *The Diagnostic and Statistical Manual of Mental Disorders (DSM–IV)* 34 (4th ed. 2000).  GAF scores in the range of 60 to 51 represent "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *Id.*  GAF scores in the range of 50-41 represent "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*  GAF scores in the range of 40 to 31 represent "[s]ome impairment in reality testing or communications (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment is several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.*  In its fifth edition of the Diagnostic and Statistical Manual of Mental Disorders, the American Psychiatric Association abandoned the GAF score due to concerns about subjectivity in application and a lack of clarity in the symptoms to be analyzed. *Kroh v. Colvin*, No. 3:13-CV-05133, 2014 WL 4384675 at *17 (M.D. Pa. Sept. 4, 2014). "Nonetheless, GAF scores are still medical evidence that informs [the] Commissioner's judgment in assessing whether an individual is disabled." *Hill v. Saul*, No. CV 19-990, 2020 WL 6135437, at *4 n.3 (W.D. Pa. Oct. 19, 2020).

The ALJ also evaluated whether De La Cruz's limitations were functionally equivalent to the listings. *Id.* at 354–70.  In evaluating the six domains, the ALJ found that, during the period relevant to her childhood-disability application, De La Cruz had: less than marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; less than marked limitation in the ability to care for herself; and no limitation in health and physical well-being. *Id.* at 365–370.  Based on these findings, the ALJ found that De La Cruz was not disabled, as defined under the Social Security Act, before she turned 18. *Id.* at 370.

### B.  The ALJ's Analysis of De La Cruz's Adult Disability Application.

On May 24, 2018, De La Cruz turned 18. *Id.* at 354.  Thus, in analyzing De La Cruz's application for benefits, the ALJ also evaluated De La Cruz's eligibility for SSI as an adult.  At step one, the ALJ found that De La Cruz had not engaged in substantial gainful activity since March 6, 2013, the date the application was filed. *Id.*

At step two, the ALJ found that De La Cruz had not developed any new impairments since turning 18. *Id.* at 370.  Thus, she had the same severe impairments that she had prior to turning 18, which are bipolar disorder, major

depressive disorder, generalized anxiety disorder, intermittent explosive disorder, conduct disorder, and ADHD. *Id.* at 370–71.

At step three, the ALJ found that De La Cruz did not have an impairment, or combination of impairments, that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 371.

The ALJ fashioned an RFC, considering De La Cruz's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that since attaining age eighteen (18), the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant retains the mental capacity to understand, remember and carry out simple instructions in an environment that is free of fast paced production requirements involving only simple work related decisions with few work place changes and to tolerate occasional interaction with supervisors, coworkers and the public.

*Id.* at 373.

In making this determination, the ALJ considered the same record evidence set forth in Section IV. A. of this opinion. *Id.*  The ALJ also considered other evidence that was obtained after De La Cruz turned 18. *Id.* at 373–74.  The ALJ noted that by June 8, 2018, De La Cruz, who had not had an appointment with a psychiatric provider for medication management since November 2, 2017, was removed from the membership roles at cyber school for unlawful absences. *Id.* Further, the ALJ noted that during the 2017-2018 school year, De La Cruz had

21

attended only 136 out of 170 days of school. *Id.*  The ALJ also noted that on June

11, 2018, De La Cruz met with a behavior health provider due to depression and

anxiety in the context of stressors, including having to repeat the ninth and tenth

grade again, lack of medication management, and lack of connection to long-term

psychiatric care. *Id.*  The ALJ noted that on July 16, 2018, De La Cruz reported that

she was going back to school after she had been kicked out of the ninth-and-tenth-

grade program for not doing her school work. *Id.*  But, the ALJ also noted, that

while therapy was recommended, there was no documentation in the record,

indicating that De La Cruz underwent therapy at that time. *Id.*

As for De La Cruz's daily activities of living, the ALJ noted that she

attended cyber school, prepared meals, performed household chores, spent most of

her days on social media, shopped in stores with her mother, dined out with her

family, applied for a job at the Boys and Girls Club, and spent time in New York

during the summer of 2017. *Id.* at 373–74.

At step four of the sequential-evaluation process, the ALJ concluded that De

La Cruz had no past relevant work. *Id.* at 374.  Continuing to step five, the ALJ

determined that De La Cruz could perform other jobs in the national economy,

including working as a cleaner, general laborer, and housekeeper. *Id.* at 375.

## V.  Discussion.

De La Cruz challenges the ALJ's decision on five bases: (1) that the ALJ failed to comply with the court's remand order; (2) that the ALJ erred by substantially disregarding or discounting the opinion testimony of her treating physicians; (3) that the ALJ erred by failing to find that her impairments met listing 112.04 (mood disorders) and/or listing 112.11 (ADHD); (4) that the ALJ's determination that she and her mother were not entirely credible was not adequately explained; and (5) that the ALJ's decision was not supported by substantial evidence.  Because we conclude that the ALJ did not properly consider the opinions of De La Cruz's physicians with respect to the CANS assessments and De La Cruz's GAF scores, we will vacate the Commissioner's decision and remand this case to the Commissioner for further consideration.

### A. The ALJ's weighing of the opinion evidence as to the CANS assessments and De La Cruz's GAF scores is not supported by substantial evidence.

De La Cruz's arguments on appeal largely concern the ALJ's weighing of the opinion evidence of record, including the ALJ's consideration of her provider's CANS assessments and her GAF scores. *Doc. 10* at 9–17.

The United States Court of Appeals for the Third Circuit has ruled that the ALJ—not treating or examining physicians or State agency consultants—must

make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 416.927.[4] The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

"A cardinal principal guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). But a "treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (alteration in original (quoting 20 C.F.R. § 404.1527(c)(2)). "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences

---

[4] For claims, such as De La Cruz's claim, filed before March 27, 2017, 20 C.F.R. § 416.927 supplies the relevant standards for considering medical opinions. For claims filed on or after March 27, 2017, however, 20 C.F.R. § 416.920c is the operative regulation. Although not applicable here, § 416.920c has eliminated the treating-source rule for claims filed on or after March 27, 2017. *Tirado-Negron v. Berryhill*, No. 3:18-CV-0003, 2018 WL 6650367, at *13 n.5 (M.D. Pa. Dec. 19, 2018).

from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429). Further, an ALJ cannot disregard a medical opinion "based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of the claimant's credibility.'" *Id.* at 318 (internal alterations omitted) (citing *Kent v. Schweiker*, 710 F.3d 110, 115 (3d Cir. 1983)).

De La Cruz argues that the ALJ erred by substantially discounting the opinions of her treating physicians. *Doc. 10* at 12–17. Specifically, De La Cruz contends that the ALJ erred by giving only partial weight to her treating physician's CANS assessments and to her GAF scores. *Id.* Significantly, in affording only partial weight to the CANS assessments, the ALJ reasoned:

> While the undersigned agrees with the findings to the extent that they are suggestive of marked limitation in interacting and relating with others, to the extent they are suggestive of marked or greater limitation in any other functional domain, they are not consistent with the record indicating that the claimant realized improvement in mental health symptoms during brief periods when she took her medications as directed, the significantly aggravating role that treatment noncompliance played upon the claimant's symptoms, the significant absences from school that may have contributed to the claimant's failure to achieve at school, the claimant's election to attend Cyber School without being compelled to do so due to any disciplinary infractions, the fact that the claimant, who had a Section 504 plan starting in the spring of 2016, has not been tested for a learning and cognitive impairment or received learning support services a[n]d the claimant's ability to focus

for long periods of time on social media and to engage with
peers with the same.

*Id*. at 363.

The ALJ also cited those same reasons for assigning only partial weight to some of De La Cruz's GAF scores. *Id*. at 364.[5]  In fact, those same reasons were a familiar refrain in the ALJ's decision.  The ALJ cited those same reasons for assigning only partial weight to the observations of Kristen Hartsock, for assigning only partial weight to the opinion of Dr. Amanullah, and for giving only partial weight to the testimony De La Cruz's mother. *Id*. at 362, 364, 365.

De La Cruz contends that it was error for an ALJ to discredit the CANS assessments and her low GAF scores based on her failure to take medication without addressing whether her failure to take medication was due to her mental illness.  In support of her argument, De La Cruz relies on the holding in *Gleason v.*

---

[5]  The ALJ noted that that while it appeared that the GAF scores were rendered by treatment providers, she "recognize[d] that the GAF assessments represent a subjective assessment of an area of [De La Cruz]'s functioning at a specific time based upon information provided by [De La Cruz] and/or third parties, not an objective representation of [De La Cruz]'s overall functioning over a longitudinal period of time." *Admin. Tr.* at 364.  Additionally, the ALJ explained that some of the GAF scores were rendered before the protective filing date in this case, and all the scores were rendered before De La Cruz turned 18. *Id.*  But the ALJ concluded that "to the extent that the scores of 55 and higher are suggestive of no more than marked limitation in interacting and relating with others and less than marked or no limitation in all other functional domains, they are supported by the record" for the reasons set forth above. *Id.*  And for those reasons, the ALJ gave the GAF scores only partial weight. *Id.*

*Colvin*, 152 F. Supp. 3d 364, 391 (M.D. Pa. 2015) (holding that "the ALJ erred by discrediting Plaintiff's low GAF scores based on a correlation with a failure to take medications without addressing whether Plaintiff's failure to take the medications was due to her mental illness."); *see also Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3p (S.S.A. Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record on th[e] basis [of failure to comply with treatment recommendations] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").  As the court in *Gleason* observed, "'federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" *Gleason*, 152 F. Supp. 3d at 391 (quoting *Pate–Fires v. Astrue,* 564 F.3d 935, 945 (8th Cir.2009)).  Moreover, "[c]ourts have acknowledged that noncompliance with treatment is especially prevalent among patients with bipolar disorder." *Voorhees v. Colvin*, 215 F. Supp. 3d 358, 381 (M.D. Pa. 2015) (citing cases).

The ALJ relied heavily on De La Cruz's improvement when taking her medications and the negative effects on her symptoms when she was not taking her medications.  But the ALJ did not analyze whether De La Cruz's failure to comply

with her treatment regimen was a result of her mental impairments.  In fact, the ALJ did not even mention De La Cruz' testimony regarding why she did not take her medication or her mother's testimony regarding that issue. *See Admin. Tr.* at 398 (De La Cruz's testimony), 394 (De La Cruz's mother's testimony).  Thus, we do not know whether the ALJ discounted that evidence (and if so, why) or whether she simply overlooked or ignored that evidence.  In sum, we conclude that the ALJ erred by significantly relying on De La Cruz's failure to take her medications without considering any such reasons for that failure.  And given that error, we cannot say that the ALJ's decision is supported by substantial evidence.

Nor can we find that the ALJ's error was harmless.  At the outset, we note that the Commissioner does not argue that any such error was harmless.  Although the Commissioner argues that De La Cruz's suggestion that her medication and treatment noncompliance is due to her impairments is not supported by the medical record, *doc. 12* at 17, the ALJ did not make such a determination.  And the Commissioner, like the ALJ, does not address either De La Cruz's testimony or the testimony of her mother regarding why De La Cruz does not take her medications. Further, while the ALJ provides additional reasons for discrediting the CANS assessments and De La Cruz's GAF scores, many of those reasons (*e.g.* De La Cruz's poor academic performance, significant school absences, and election to attend cyber school without being compelled to do so due to any disciplinary

infractions) may also be impacted by De La Cruz's medication noncompliance, which she alleges is a hallmark of her bipolar disorder.

Accordingly, because the ALJ improperly relied on De La Cruz's medication noncompliance in discrediting the CANS assessments and De La Cruz's GAF scores, substantial evidence does not support the ALJ's decision.

The question then is whether we should remand the case to the Commissioner for further proceedings or we should award benefits to De La Cruz, as she requests. *See doc. 10* at 26 (requesting that benefits be awarded rather than the case remanded again).  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a

whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, De La Cruz's claim has been pending for more than seven years, which weighs against another remand, which will further delay the case.  But we cannot say that substantial evidence on the record as a whole indicates that De La Cruz is disabled and entitled to benefits.  Rather, the ALJ's error here was failing to adequately explain her reasoning, which may be remedied on remand.  Thus, we will remand the case to the Commissioner for further proceedings.

## B.  De La Cruz's Remaining Claims of Error.

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's improper reliance on De La Cruz's

30

medication noncompliance in weighing the CANS assessments and De La Cruz's GAF scores, we will not address De La Cruz's remaining claims of error. *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016) (adopting Report and Recommendation of a magistrate judge that declined to address other allegations or error because "[a] remand may produce different results on these claims, making discussion of them moot").

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be vacated, and the case will be remanded to the Commissioner for further consideration.  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
Chief United States Magistrate Judge